IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILLIE C. BULLARD, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-08-2999 |
| | § | |
| MICHAEL J. ASTRUE, COMMISSIONER | § | |
| OF THE SOCIAL SECURITY | § | |
| ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Pending before the court[1] is Plaintiff's Motion for Summary Judgment (Docket Entry No. 16) and Defendant's Cross-Motion for Summary Judgment (Docket Entry No. 14). The court has considered the motions, all relevant filings, and the applicable law. For the reasons set forth below, the court **GRANTS** Defendant's motion and **DENIES** Plaintiff's motion.

## I. Case Background

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration ("Commissioner") regarding Plaintiff's claim for disability benefits under Title II and Title XVI of the Social Security Act ("the Act").

### A. Factual History

Plaintiff was born on September 8, 1962, and was forty-one

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Docket Entry Nos. 11, 12, and 13.

years old on the date of the alleged onset of disability.[2] Plaintiff graduated from high school and attended the Art Institute of Houston for one year.[3]  Immediately prior to the alleged onset of disability, Plaintiff worked as a car detailer.[4]

In a disability report dated October 3, 2006, Plaintiff averred that his blindness in one eye made it difficult to read and focus on objects.[5]  He claimed that this condition made him unable to work commencing on January 29, 2004, but, inexplicably, he also disclosed that he still was employed, working the same hours and performing the same job duties as before the onset of disability.[6]

On a another form, a daily activity questionnaire, Plaintiff was asked how his physical problems limited his ability to perform tasks.[7]  He responded, "I can't see out of my right eye and my left is sometimes blurry and sometimes clear.  So it is hard for me to do many jobs." [8]  In response to the question what he did for exercise, Plaintiff stated, "My job washing cars keeps me active."[9] On an average day Plaintiff stated, "I get up, get dressed, eat

---

[2]     Transcript of Administrative Proceedings ("Tr.") 119.

[3]     Tr. 141, 177-78, 220.

[4]     Tr. 138, 145.

[5]     Tr. 138.

[6]     Id.

[7]     Tr. 154.

[8]     Id.

[9]     Id.

breakfast, catch the bus and go to my job."[10]   Plaintiff disclosed no limitation in any activity except driving a car, due to his limited range of vision.[11]

On January 13, 2005, Plaintiff was examined by Richard L. Kimbrough, M.D., ("Dr. Kimbrough").[12]   Dr. Kimbrough found that Plaintiff was legally blind in his right eye due to a macular scar and dislocated lens.[13]   Dr. Kimbrough described Plaintiff's corrected right-eye vision as able to "count fingers."[14]   Dr. Kimbrough found that Plaintiff's visual acuity in his left eye was 20/400 without correction and 20/30 with a corrective lens.[15]

Based on Dr. Kimbrough's report, on February 25 and March 1, 2005, Plaintiff's low vision was found to be a non-severe impairment by several physicians reviewing his claim for disability benefits.[16]

On January 13, 2007, Plaintiff submitted to a psychological evaluation at the request of his attorney.[17]   Dr. Eva Stubits, Ph.D, ("Dr. Stubits") performed the evaluation.   On the Wechsler Adult Intelligence Scale - III ("WAIS-III"), Plaintiff had a Verbal

---

[10]   Id.

[11]   Tr. 155.

[12]   Tr. 179-84.

[13]   Tr. 183-84.

[14]   Tr. 187.

[15]   Tr. 183.

[16]   Tr. 185.

[17]   Tr. 191.

Intelligence Quotient ("IQ") of 68, a Performance IQ of 78 and a Full Scale IQ of 70.[18]  These scores indicated that Plaintiff was functioning in the mild range of mental retardation.[19]  Plaintiff's academic achievement scores measured by the Wide Range Achievement Test - Revision 3 ("WRAT-3") showed that he performed at the second grade level in reading and spelling and at the fourth grade level in math.[20]  Dr. Stubits found that the reading and spelling subtest scores were lower than expected when compared to the WAIS-III, suggesting a possible learning impairment in those areas.[21]

Based on her interview of Plaintiff, Dr. Stubits found him to have spontaneous, coherent speech and she noted that Plaintiff displayed no difficulty in comprehending oral language.[22]  Plaintiff informed Dr. Stubits that he was independent in all activities of daily living, including bathing, grooming, preparing meals, making telephone calls, and taking the bus.[23]  Plaintiff reported that he was capable of driving although he did not drive because of his eyesight.[24]  Plaintiff related that his hobbies included basketball, playing pool and drawing.[25]  Plaintiff frequently watched the news

---

[18]   Tr. 193.

[19]   Tr. 194.

[20]   Id.

[21]   Id.

[22]   Tr. 192.

[23]   Id.

[24]   Id.

[25]   Id.

on television and attended church services two times a month.[26]

The only available educational record for Plaintiff was his high school transcript.[27]  Plaintiff attended high school for five and one-half years and graduated with a class rank of 563 out of 655.[28] He earned mostly C's, D's and F's, with a smattering of A's and B's in art, physical education, and ROTC. [29]  The transcript reflected that Plaintiff was enrolled in remedial reading classes for two years in high school; it did not reflect that Plaintiff was enrolled in other special education classes.[30]

**B.  Procedural History**

Plaintiff filed for disability benefits on February 1, 2005.[31] Plaintiff claimed an inability to work based on blindness and low vision since January 29, 2004.[32]  On March 1, 2005, Plaintiff's application was denied based on a finding that he was not statutorily blind.[33]  Plaintiff's application again was denied on reconsideration.[34]  Plaintiff timely requested a hearing before an

---

[26]    Id.

[27]    Tr. 177-78.

[28]    Id.

[29]    Id.

[30]    Id.

[31]    Tr. 26.

[32]    Tr. 26, 114.

[33]    Tr. 28.

[34]    Tr. 27, 93.

Administrative Law Judge ("ALJ"). [35]   The ALJ granted Plaintiff's request and conducted a hearing on March 26, 2007. [36]

Plaintiff testified that he graduated from high school and attended the Art Institute of Houston for one year, taking commercial art classes and earning B's in his classes. [37]  Plaintiff stated that he was in special education classes for math and English in high school. [38]  However, Plaintiff admitted that he was able to perform basic arithmetic and could read and write the English language. [39]

Plaintiff disclosed that he was presently working as a car detailer, working eight hours per day, six days per week. [40]  He had worked there, on and off, for the last four years. [41]   Plaintiff admitted that he was paid in cash, did not receive a W-2 form and earned approximately four hundred dollars per month. [42]  Plaintiff stated that he had no difficulty working as a car detailer on a full-time basis. [43]

Prior to his present employment, Plaintiff related that he had

---

[35]     Tr. 87.

[36]     Tr. 213.

[37]     Tr. 220, 221.

[38]     Tr. 221.

[39]     Id.

[40]     Tr. 222.

[41]     Id.

[42]     Tr. 223.

[43]     Id.

been employed as a security guard for approximately two years and had left that job because the company went out of business. [44] Before his employment as a security guard, Plaintiff worked as a cook at a fast food restaurant for three years, as a construction worker for two years, and a grocery stocker for an unspecified period of time. [45]

Plaintiff stated that, although he is able to drive, he has never applied for a driver's license because he believed he would not be able to pass the vision test. [46]  Plaintiff explained that he had little vision remaining in his right eye and his left eye was occasionally blurry.  Although he had used a contact lens to correct his vision in his left eye at one time, Plaintiff testified that he had stopped wearing the lens. [47]

Plaintiff stated that, during a typical work day, he rose at 6 a.m., arrived at work by 8 a.m., and worked eight hours. [48]  After work, Plaintiff stated that he might watch television at home or play basketball or dominoes with his nephews. [49]  Plaintiff also testified that he did his own shopping and housework. [50]

Plaintiff's older sister, Doris Sauls ("Sauls"), testified

---

[44]    Tr. 223-24.

[45]    Tr. 224-25.

[46]    Tr. 226.

[47]    Tr. 228.

[48]    Id.

[49]    Tr. 226-27.

[50]    Tr. 227.

that Plaintiff had had difficulty in school and was placed in special education classes.[51] She stated that she did not think that he was able to fill out an employment application.[52] Sauls related that she has driven Plaintiff to job-related appointments.[53] She stated that, while Plaintiff did not have a problem with concentration when washing cars, in general, concentration was a problem for him.[54] Sauls stated that Plaintiff has been married, has three children and has lived, on and off, with his mother for most of his life.[55] At the time of the hearing, he resided with his mother.[56]

The vocational expert ("VE") classified Plaintiff's current employment as an automobile detailer at a car wash as medium and unskilled and his prior employment as a security guard as light and semi-skilled.[57] Plaintiff's jobs as a fast food worker and a parking lot attendant were both determined to be light, unskilled work.[58]

To determine Plaintiff's residual functional capacity ("RFC"),

---

[51]   Tr. 233.

[52]   Id.

[53]   Tr. 234.

[54]   Id.

[55]   Tr. 235.

[56]   Id.

[57]   Tr. 237.

[58]   Id.

the ALJ posed several hypothetical questions to the VE. [59]   The questions assumed that a hypothetical individual had Plaintiff's age, past relevant work experience, and transferable skills.[60]   The hypothetical individual had no exertional limitations but was precluded from performing work that would require constant excellent visual acuity or right-sided peripheral vision. [61]   The individual would also be precluded from performing work at unprotected heights, in the presence of hazardous machinery or equipment or that was highly detailed or complex in nature.[62]

Assuming the above limitations, the VE found that the hypothetical person was capable of performing work as an auto detailer, a parking lot attendant, a fast food worker and a security guard.   She also testified that the hypothetical individual would be able to perform the requirements of other jobs that existed in the approximate numbers in the Texas and national economies:  hospital cleaner (4,500 statewide, 195,000 nationally), kitchen helper (7,000 statewide, 275,000 nationally) or laundry worker (6,000 statewide, 240,000 nationally).[63] If the hypothetical worker were determined to be functionally illiterate, he would be precluded from working as a security guard.[64]   Plaintiff's attorney

---

[59]   Tr. 238.

[60]   Id.

[61]   Id.

[62]   Id.

[63]   Tr. 238-39.

[64]   Tr. 239.

posed no questions to the VE.[65]

On May 7, 2007, the ALJ issued a decision finding that Plaintiff met the requirements for insured status through December 31, 2004.[66]  After reviewing all the evidence the ALJ found that Plaintiff had not been under a disability within the meaning of the Social Security Act from January 29, 2004, through the date of his decision.[67]

The ALJ found that Plaintiff's borderline intellectual functioning was a severe impairment; Plaintiff's vision impairment was found to be not severe because his vision was correctable to 20/30 in one eye.   After considering a private consultative examination and school records, the ALJ found Plaintiff's borderline intellectual functioning did not meet or equal the severity required by the applicable Listing.[68]

The ALJ found that Plaintiff had the residual functional capacity to perform a wide range of work at all exertional levels, with the following limitations: no work requiring excellent visual acuity or right-sided peripheral vision; no work at unprotected heights or in the presence of hazardous machinery or equipment; and no highly detailed work having one- to three-step operations.[69]  The

---

[65]    Id.

[66]    Tr. 17.

[67]    Id.

[68]    Tr. 20.  "Listing" refers to impairments listed in Appendix 1 of the Social Security Act regulations.  20 C.F.R. Pt. 404, Subpt. P, App. 1.

[69]    Tr. 20.

ALJ found that Plaintiff was capable of performing his past relevant work as an auto detailer and a fast food worker.[70] The ALJ ruled that Plaintiff had not been under any disability through the date of that decision.[71]

Plaintiff appealed the ALJ's decision, and the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Social Security Administration. [72] Plaintiff filed his appeal with this court on May 13, 2008.[73]

## II. Standard of Review and Applicable Law

The court's review of a final decision by the Commissioner denying disability benefits is limited to the determination of whether: 1) substantial evidence in the record supports the decision; and 2) the ALJ applied proper legal standards in evaluating the evidence. Waters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002); Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).

## A. Substantial Evidence

The widely accepted definition of "substantial evidence" is "that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). It is "something more than a scintilla but less than a preponderance." Id. The Commissioner has the responsibility of resolving any conflict in the evidence.

---

[70]   Tr. 24.

[71]   Id.

[72]   Tr. 3, 11.

[73]   See Complaint, Docket Entry No. 1.

11

Id.   If the findings of fact contained in the Commissioner's decision are supported by substantial record evidence, they are conclusive, and this court must affirm.   42 U.S.C. § 405(g); Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it.   Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1998).   In applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment.   Brown, 192 F.3d at 496.   In other words, the court is to defer to the decision of the Commissioner as much as is possible without making its review meaningless.   Id.

**B.  Legal Standard**

In order to obtain disability benefits, a claimant bears the ultimate burden of proving he is disabled within the meaning of the Act.   Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir. 1991).   Under the applicable legal standard, a claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 423(d)(1)(a);   see also Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).   The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), (d)(5)(A); see also Jones v. Heckler, 702

12

F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to an impairment listed in [the Listings] will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled;" and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and [RFC] must be considered to determine whether he can do other work.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); see also 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  By judicial practice, the claimant bears the burden of proof on the first four of the above steps, while the Commissioner bears it on the fifth.   Crowley v. Apfel, 197 F.3d 194, 198 (5th Cir. 1999); Brown, 192 F.3d at 498. If the Commissioner satisfies his step-five burden of proof, the burden shifts back to the claimant to prove she cannot perform the work suggested.   Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).   The analysis stops at any point in the process upon a finding that the claimant is disabled or not disabled.  Greenspan, 38 F.3d at 236.

### III.  Analysis

Plaintiff requests judicial review of the ALJ's decision to deny disability benefits.  Plaintiff contends the ALJ's decision is

not supported by substantial evidence and that the ALJ did not follow proper legal procedures.  Specifically, Plaintiff argues that: (1) the ALJ erred in failing to find that Plaintiff's vision impairment was severe; and (2) the ALJ erred in evaluating Plaintiff's mental impairments.  In response, Defendant argues that the ALJ's decision is legally and factually correct in all respects.

## 1.  Plaintiff's vision impairment

The ALJ found that Plaintiff was blind in one eye but had vision in the other eye correctable to 20/30.[74] Plaintiff complains that the ALJ erred in finding that this vision impairment was not a severe impairment and argues that Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985), requires a remand to the Commissioner for reconsideration.  In Stone, the court found that "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  Plaintiff complains that the ALJ applied an improper standard when he stated, "An impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have not more than a minimal effect on an individual's ability to work."[75]

Both the ALJ and the Stone court cited the applicable

---

[74]    Tr. 20.

[75]    Tr. 18.

14

regulation, 20 C.F.R. § 404.1520(c).[76]   Plaintiff argues that the difference between the two is that Stone "does not allow for even a minimal effect on a claimant's ability to work."[77]   Plaintiff misreads the Stone holding.   In Stone, the court found that the Commissioner had an institutional policy of making determinations against disability at the second step of the disability analysis by finding an impairment to be not severe without reference to a claimant's ability to perform substantial gainful activity.   Stone, 752 F.2d at 1103.

The court stated, "If [the Secretary, ALJ's and appeals council] allow the factfinding to rest alone upon a marshaling of medical proof under an administrative standard of medical severity that disregards the ability of any or all claimants to work, the administrative findings will not be acceptable to us . . . ."   The court concluded:

> If we read this statute to authorize the Secretary to deny "disability" to a claimant suffering a physically or mentally disabling impairment, and for that reason unable to engage in substantial gainful work, whenever the Secretary is not satisfied with the "severity" of the impairment, we would be holding contrary to the expressed Congressional purpose and rewriting the statute to leave the determination of disability solely to the Secretary's discretion about severe impairments. We can find no

---

[76]   20 C.F.R. § 1520(c) states:

You must have a severe impairment. If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience. However, it is possible for you to have a period of disability for a time in the past even though you do not now have a severe impairment.

[77]   Plaintiff's Motion for Summary Judgment, Docket Entry No. 16, p. 8.

> justification in the statutory language, nor in the history of this legislation, for the Secretary's position.

The court cautioned that unless the Secretary applied the correct standard and extended the disability analysis to consider whether a claimant could engage in substantial gainful employment, future cases would be remanded for reconsideration.  <u>Stone</u>, 752 F.2d at 1106.

The court does not find that the ALJ committed a <u>Stone</u>-type error because, in this case, he applied the correct legal standard. However, even if the court were to agree with Plaintiff that the ALJ incorrectly determined that the vision impairment was not severe, the ALJ proceeded to consider the remaining steps of the five-step <u>Bowling</u> analysis, found that Plaintiff's vision impairment did not meet Listing 2.02, and took Plaintiff's vision impairments into consideration in his decision finding that Plaintiff was able to engage in substantial gainful employment.[78] A remand under these circumstances would not change the result. <u>See</u> <u>Hampton v. Bowen</u>, 785 F.2d 1308, 1311 (5th Cir. 1986)(remand is not necessary where the record clearly establishes that both the <u>Stone</u> and CFR standard are satisfied).  Thus, the ALJ's decision related to Plaintiff's vision impairment must be affirmed.

## 2.  Plaintiff's mental impairment

Plaintiff argues that the ALJ erred in finding that his mental

---

[78]     Tr. 20.  The ALJ found that Plaintiff's RFC was limited to: no work requiring excellent visual acuity or right-sided peripheral vision; no work at unprotected heights or in the presence of hazardous machinery or equipment; and no highly detailed work (one to three step operations). <u>Id.</u>

impairments did not meet the requirements for disability under
Listing 12.05(C).[79]   At step three, the claimant bears the burden to
prove that his impairment or combination of impairments meets or
equals a Listing.   20 C.F.R. § 404.1520(d); <u>Crowley</u>, 197 F.3d at
198.   "For a claimant to show that her impairment matches a
listing, it must meet all of the specified medical criteria.   An
impairment that manifests only some of those criteria, no matter
how severely, does not qualify."  <u>Sullivan v. Zebley</u>, 493 U.S. 521,
530 (1990).   The ALJ is responsible for determining whether a
severe impairment meets or equals a Listing.  <u>See</u> Soc. Sec. Ruling
96-6P, 1996 WL 374180 at *3.

To meet the requirements of Listing 12.05, Mental Retardation,
a claimant must meet its diagnostic description and any one of its
four severity criteria.  <u>See Randall v. Astrue</u>, No. 08-30783, 2009
WL 1578236 at *6 (5th Cir. June 8, 2009)(unpublished).   The
diagnostic description for Listing 12.05 requires "significantly
subaverage  general  intellectual  functioning  with  deficits  in
adaptive functioning initially manifested during the developmental
period; i.e., the evidence demonstrates or supports onset of the
impairment before age 22."  20 C.F.R. Pt. 404, Subpt. P, App. 1, §
12.05.   In addition to the above description, Section C of Listing
12.05 is met if a claimant has "[a] valid verbal, performance, or
full scale IQ of 60 through 70 and a physical or other mental
impairment imposing  an  additional  and  significant  work-related
limitation of function."   <u>Id.</u>   In order to meet the Listing,

---

[79]     Plaintiff's Motion for Summary Judgment, Docket Entry No. 16, p. 9.

17

Plaintiff must satisfy both the general requirements and the specific "C" criteria.

Although Plaintiff's full scale IQ score of 70 and his performance IQ score of 68 meet one aspect of first prong of the "C" criteria, he must also satisfy the general requirement that the onset of the subaverage intellectual functioning occurred before he reached age twenty-two.  In addition to the above, the "C" criteria requires significant functional limitations in the areas of daily living, social functioning, concentration, persistence or pace and episodes of decompensation.  See 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).  Those functional limitations must be rated in severity.  See 20 C.F.R. §§ 404.1520a(d), 416.920a(d).  Finally, the findings must be documented.  See 20 C.F.R. §§ 404.1520a(e), 416.920a(e).

At the initial and reconsideration levels, a medical or psychological expert must review and sign the document evaluating a claimant's functional limitations.  See 20 C.F.R. §§ 404.1520a(e)(1), 416.920a(e)(1).  As Plaintiff did not claim a mental impairment at the initial and reconsideration levels, this analysis was not performed.  Plaintiff complains that this evaluation should have been performed and requests that his claim be remanded in order that the ALJ rate the four functional areas - activities of daily living, social functioning, concentration, persistence and pace, and episodes of decompensation - required by the Listing.

Plaintiff is correct that 20 C.F.R. §§ 404.1520a, 416.920a

required the ALJ to consider the degree of functional limitations found in each of the four areas recited above and expressly incorporate his findings into his written decision.[80]  Plaintiff is also correct that the ALJ failed to expressly consider each of the four functional areas in his opinion.  As discussed below, such error is harmless and does not require a remand.

The first part of the Listing 12.05 required Plaintiff to show that he had a significantly subaverage intelligence with an onset prior to age twenty-two.  The only evidence that Plaintiff produced in support of this requirement was his own testimony and the testimony of his sister.  Plaintiff testified that he was in "kind of special education classes," explaining merely, "I guess special education classes like math and stuff like that, English.  It was like a special class I was in."[81]

When the ALJ confronted Plaintiff with responding "no" to a question asking whether he was ever in special education, Plaintiff

---

[80]    The applicable regulations provide:

2) At the administrative law judge hearing and Appeals Council levels, and at the Federal reviewing official, administrative law judge, and the Decision Review Board levels in claims adjudicated under the procedures in part 405 of this chapter, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

See 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2).

[81]    Tr. 221.

19

stated that the "no" answer was incorrect and tried to explain, "By my grades, yes, sir."[82]   The topic was not pursued at the hearing and the court is left with the impression that Plaintiff cited to his poor grades as evidence of mental retardation.   Plaintiff's sister testified that she was fourteen years older than Plaintiff.[83] She stated that Plaintiff had problems in school and was placed in a class of other children who were also slow learners.[84]   Sauls was of the opinion that Plaintiff had problems with reading and math.[85]

In light of the meager record concerning Plaintiff's functioning during his school years, the ALJ found that Plaintiff failed to meet his burden to show that he functioned in the mentally retarded range prior to reaching age twenty-two as required by the Listing.[86]   Significant to the ALJ were the facts that Plaintiff did not allege a mental impairment at the time of his initial application, that Plaintiff attended one year of professional school earning B's and that Plaintiff was not in special education classes in high school.[87]   The ALJ discounted Plaintiff's testimony that he was in special education classes as not entirely reliable in light of his high school transcript.[88]   The

---

[82]   Id.

[83]   Tr. 232.

[84]   Tr. 233.

[85]   Id.

[86]   Tr. 20.

[87]   Id.

[88]   Tr. 23.

ALJ also found it worth noting that Plaintiff underwent IQ testing
not in an attempt to seek treatment but through an attorney
referral in connection with his disability appeal. [89]   The ALJ
concluded that there was no evidence that Plaintiff had a history
of functioning at the mentally retarded level prior to age twenty-
two.[90]   The ALJ also found that Plaintiff's activities after
reaching age twenty-two did not evidence mental retardation, noting
that Plaintiff had participated in the work force for much of his
adult life and was largely independent in his activities of daily
living.[91]

The Fifth Circuit has stated, "Procedural perfection in
administrative proceedings is not required.  This court will not
vacate a judgment unless the substantial rights of a party have
been affected." Qualls v. Astrue, No. 08-60901, 2009 WL 2391402
(5th Cir. Aug. 4, 2009)(unpublished) quoting Mays v. Bowen, 837 F.2d
1362, 1364 (5th Cir. 1988).  Remand is required only when procedural
improprieties would "cast into doubt the existence of substantial
evidence to support the ALJ's decision.  Morris v. Bowen, 864 F.2d
333, 335 (5th Cir. 1988).

The court concludes that the ALJ's decision that Plaintiff
failed to show that he was functioning at a significantly
subaverage general intellectual level prior to age twenty-two is
supported by substantial evidence.  Given that finding, the ALJ's

---

[89]    Tr. 24.

[90]    Tr. 20, 177.

[91]    Tr. 20.

failure to reach the second part of Listing 12.05's "C" criteria and consider Plaintiff's functional limitations is not an error that affected Plaintiff's substantial rights.

**B.   Defendant's Motion for Summary Judgment**

Defendant asserts that the ALJ's decision should be affirmed because he properly determined Plaintiff was not disabled.[92] Specifically, Defendant argues that substantial evidence exists and the proper legal standards were used to determine that Plaintiff was not disabled.[93]

The court recognizes that Plaintiff faces significant challenges in his life; however, the record must be reviewed with a view toward determining only whether the ALJ's decision is supported by more than a scintilla of evidence. See Carey, 230 F.3d at 135.   As the court finds more than a scintilla of evidence in support of the determination, it cannot overturn the decision of the ALJ, who is given the task of weighing the evidence and deciding disputes. See Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001); Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991).   The court also agrees with Defendant that the ALJ applied proper legal standards in evaluating the evidence and in making his determination.

The court finds that more than a scintilla of evidence exists

---

[92]   Defendant's Memorandum in Support of Cross-Motion for Summary Judgment, Docket Entry No. 11, p. 8.

[93]   See id.

22

to support the ALJ's decision and that the ALJ committed no legal error; therefore, Defendant's Motion for Summary Judgment should be **GRANTED**.

## IV. Conclusion

Based on the foregoing, Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED**.

**SIGNED** in Houston, Texas, this 23rd day of September, 2009.

Nancy K. Johnson
United States Magistrate Judge

23